UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERIC HOLTS, *on behalf of himself and of all others similarly situated* | CIVIL ACTION |
| v. | NO. 19-13546 |
| TNT CABLE CONTRACTORS, INC., ET AL. | SECTION "F" |

ORDER AND REASONS

Before the Court is TNT Cable Contractors, Inc.'s motion to compel arbitration and stay litigation. For the reasons that follow, the motion is GRANTED.

**Background**

This Fair Labor Standard Act collective action arises out of claims by technicians that their joint employers failed to pay them overtime wages.

TNT Cable Contractors, Inc. and Udeo Services One, Inc. provide telecommunication and installation services for residential and commercial clients. Since March 2019, Eric Holts has worked as a technician for TNT and Udeo. Holts' primary duties include driving to TNT's warehouse to pick up supplies and equipment along with a list or route of customers requiring installation service that day; driving to the customers' home or

1

business to install or repair equipment; calling customers to confirm appointments; attending meetings as required by TNT and Udeo; submitting electronic information regarding completed jobs at the end of each day; returning to TNT's office at the end of the day if necessary.

On March 13, 2019, Holts and Udeo executed a Contractor Arbitration Agreement, which broadly requires Holts and Udeo to arbitrate "any and all claims of employment, joint employment, co-employment, discrimination...," as well as "any and all claims arising out of any other local, state or federal statute, regulation or policy relating to the rights of Contractors, Employees, or Joint Employees such as those relating, but not limited to payment of wages, fringe benefits, work hours, employment classification, joint employment..., including but not limited to...the Fair Labor Standards Act."

In May 2019, Udeo and TNT entered into an Independent Contractor Agreement, which references the parties' own arbitration agreement, which requires Udeo and TNT to "bring all claims subject to arbitration in one arbitration proceeding" and to submit all "covered claims" to arbitration. "Covered claims" are broadly defined as including "but...not limited to, all claims related to work performed under the Independent Contractor Agreement...and specifically including any claim or cause of

2

action alleging [Udeo] w[as] improperly or insufficiently paid wages under the Fair Labor Standards Act..., regardless of whether those claims arose or accrued prior or subsequent to [Udeo] entering into this Arbitration Agreement."

On November 11, 2019, Holts sued TNT and Udeo, alleging that he and other technicians regularly work more than 40 hours per week, and that the defendants are joint employers that failed to pay overtime wages to him and other technicians.  The lawsuit was filed as a collective action under the FLSA.  It is alleged that Udeo is a subcontractor of TNT, but that the entities are "joint employers," which "have been an enterprise[;]" "control[] and supervise[] the work performed by" Holts and similarly situated individuals; determine the technicians' pay rate, wage deductions, direction to work locations; and direct the specifics of Holts' installation jobs.  TNT and Udeo pay Holts and the putative class members a set amount per job, regardless of the time spent working. Holts alleges that he and the other technicians regularly work over 40 hours per week, and that TNT and Udeo's failure to pay overtime violates the FLSA.

On January 9, 2020, Holts voluntarily dismissed his claims without prejudice as to Udeo, perhaps recognizing that he agreed to arbitrate his FLSA claims.  TNT now seeks an order compelling arbitration and requests that this litigation be stayed.

I.

*A.*

There is a "strong federal policy in favor of enforcing arbitration agreements." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985). Section 2 of the Federal Arbitration Act provides that

> [a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction...shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract.

9 U.S.C. § 2. Consistent with this strong presumption in favor of arbitration, the FAA requires district courts to "compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made." Sedco, Inc. Petroeleos Mexicanos Mexican Nat'l Oil Co., 767 F.2d 1140, 1147 n.20 (5th Cir. 1985). Section 3 of the FAA states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration. . . the court. . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . .

9 U.S.C. § 3. This mandatory provision calls for a stay or dismissal of the proceedings at the request of a party if the dispute is referred to arbitration. Tittle v. Enron Corp., 463 F.3d 410, 417 n.6 (5th Cir. 2006); Alford v. Dean Witter Reynolds,

4

Inc., 975 F.2d 1161, 1164 (5th Cir. 1992). If the Court is satisfied that the parties agreed to arbitrate their dispute, the Court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

Courts undertake a two-step inquiry when considering motions to compel arbitration. Washington Mut. Finance Group v. Bailey, 364 F.3d 260, 263 (5th Cir. 2004). The first step requires a finding that the parties agreed to arbitrate the dispute at issue. Id.[1] Second, upon such a finding, the Court must consider whether any federal statute or policy renders the claims nonarbitrable. Bailey, 364 F.3d at 263.

*B.*

A litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA and the relevant agreement if the relevant state contract law allows the litigant to enforce the

---

[1] The first determination itself has two parts: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." Webb v. Investacorp, Inc., 89 F.3d 252, 257-58 (5th Cir. 1996). While state law governs the first consideration, in which the federal policy favoring arbitration does not apply, see Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 537-38 (5th Cir. 2003), "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." Webb, 89 F.3d at 258.

5

agreement. Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009). Traditional state law principles such as estoppel allow a contract to be enforced by or against non-signatories. Id. (quotation omitted). Indeed, federal courts have recognized five traditional bases for binding non-signatories to the arbitration agreements of others. Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 766 (2d Cir. 1995). These bases include: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." Id. The Fifth Circuit has adopted the doctrine of equitable estoppel, allowing "a non-signatory to a contract with an arbitration clause to compel arbitration." Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527 (5th Cir. 2000).

"[A] party to an arbitration agreement[,]" like Holts, "may be equitably estopped from litigating its claims against non-parties in court and may be ordered to arbitration." Brown v. Pacific Life Ins. Co., 462 F.3d 384, 398 (5th Cir. 2006). When intertwined claims are present, a non-signatory like TNT may compel arbitration:

> (1) when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against a non-signatory; or (2) when the signatory raises allegations substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract.

6

Id. (citing Grigson v. Creative Artists Agency, LLC, 210 F.3d 524, 528 (5th Cir. 2000)).[2] The Fifth Circuit in Grigson observed that equitable estoppel "is much more readily applicable when the case presents both independent bases," but the court underscored that determining whether to apply equitable estoppel to evaluate whether a non-signatory may compel arbitration in the intertwined claims context turns on the facts of each case and further observed that fairness is the "linchpin" for equitable estoppel. See Grigson, 310 F.3d at 527-28 (embracing the intertwined claims test of equitable estoppel formulated by the Eleventh Circuit in MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999), *abrogated on other grounds*, Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009)). This rule "makes sense because the parties resisting arbitration had expressly agreed to arbitrate claims of the very type that they asserted against the nonsignatory." Bridas

---

[2] The first Grigson basis, or the direct benefits rationale, is met when "each of the signatory's claims makes reference to or presumes the existence of the agreement." Palmer Ventures LLC v. Deutsche Bank AG, 254 Fed. Appx. 426, 431 (5th Cir. 2007)(citing Grigson, 210 F.3d at 527). "[E]quity does not permit a signatory to hold a non-signatory liable on the basis of the agreement containing the arbitration clause while denying the effect of the arbitration clause to the non-signatory." Id. (citing Grigson, 210 F.3d 528). The second basis, the substantially interdependent claims rationale, requires more than just intertwining facts between the claims against signatories and non-signatories. Id. at 432. "The standard is 'substantially concerted and interdependent misconduct . . . .'" Id. (quoting Grigson, 210 F.3d at 527).

S.A.P.I.C. v. Gov't of Turkm._,_ 345 F.3d 347, 361 (5th Cir.2003); see Ryan v. Thunder Restorations, Inc., No. 09-3261, 2011 WL 2680482, at *8 (E.D. La. July 8, 2011).

In other words, arbitration may be compelled by a non-signatory under equitable estoppel where the claims are "inextricably tied." See Gautier v. Bactes Imaging Solutions, LLC., No. 18-1435, 2018 WL 4095153, at *4 (E.D. La. Aug. 28, 2018)(granting non-signatory defendant's motion to compel arbitration under equitable estoppel given that the plaintiff's claims against the signatory defendant were predicated on the claims against the non-signatory defendant). In Hill v. G E Power Systems, Inc., 282 F.3d 343, 349 (5th Cir. 2002), the Fifth Circuit found that the second basis of the test was met where it was alleged that two companies worked in tandem to misappropriate trade secrets and fraudulently induce a party to contract with them. Such conduct met the standard of "interdependent and concerted misconduct." Id.

## II.

Holts and Udeo are the only signatories to the Contractor Arbitration Agreement; TNT is a non-signatory. Nevertheless, TNT seeks to compel arbitration of Holts' FLSA claims because of the intertwined, indeed identical, nature of the claims. Because Holts fails to distinguish Udeo's and TNT's alleged wrongdoing in his

8

complaint, and specifically alleges that they jointly employed him and jointly failed to pay him overtime, TNT submits that Holts should be compelled to arbitrate his claims against TNT along with his claims against Udeo under the doctrine of equitable estoppel. The Court agrees.

In his complaint, Holts alleges that "Defendants were joint employers of the Plaintiff within the meaning of the FLSA. Defendants do not act entirely independent of each other and are not completely dissociated with respect to the employment of the Plaintiff." Holts himself does not distinguish TNT's wrongdoing in allegedly failing to pay overtime in any way from the alleged wrongdoing of Udeo. Holts' FLSA claims are based on identical facts. Equitable estoppel requires "substantially interdependent and concerted misconduct" by both the signatory and the non-signatory. Here, the allegations against TNT and Udeo cannot be separated. By failing to differentiate between the wrongdoing by each defendant, Holts alleges interdependent claims. Fairness -- the "linchpin" of equitable estoppel -- militates against arbitrating Holts' claims against Udeo while litigating his identical claims against TNT. Grigson, 210 F.3d at 528. Arbitrating claims against Udeo while litigating claims against TNT could yield inconsistent results, waste time and resources, and thwart federal policy favoring arbitration.

Analogous case literature reinforces the conclusion that TNT's motion to compel arbitration should be granted. For example, TNT invokes Henry v. New Orleans Saints, No. 15-5971, 2016 WL 2901775 (E.D. La. 2016). There, the plaintiff sued the Saints, Tom Benson, and Gayle Benson asserting causes of action under the FLSA for failure to pay overtime wages. Id. at *1. All three defendants moved to compel arbitration based on the arbitration agreement between the plaintiff and the Saints. The plaintiff contested the Bensons' motion to compel because the Bensons were non-signatories to the arbitration agreement. Another Section of this Court disagreed, finding instead that the intertwined claims rationale applied because the plaintiff had alleged substantially interdependent and concerted misconduct against the Bensons and the Saints and that all of the defendants were his "employer" under the FLSA. Id. at *12. "Given the relatedness of the claims collectively asserted against the Defendants," the Court reasoned, "the arbitration agreement can be invoked by all Defendants, including the Bensons." Id. at *13.

So, too, here. Holts characterizes TNT and Udeo as "joint-employers," just like how Henry characterized the Saints and the Bensons collectively as his employers. Holts' claims against the arbitration signatory, Udeo, and non-signatory, TNT, are interdependent (if not identical) like the ones alleged by Henry

10

against the signatory, the Saints, and non-signatories, the Bensons, given that they arise out of the alleged joint employment arrangement. As the Court noted in Henry, federal policy favoring arbitration would not be fulfilled if the Court denied the motion to compel arbitration of Holts' claims against TNT. Allowing Holts to pursue his identical claims against TNT and Udeo in separate forums would be unfair and could lead to inconsistent results.[3]

Holts opposes TNT's motion to compel arbitration because TNT is a non-signatory to his arbitration agreement with Udeo and because his allegation that Udeo and TNT are joint employers is insufficient to render the claims interdependent. However, it is not simply the plaintiff's own nomenclature that indicates interdependence. Holts himself fails to distinguish the alleged wrongdoing between the two parties and alleges that neither party acted fully independently of the other. The plaintiff's own factual allegations that TNT and Udeo jointly or indivisibly failed to pay overtime wages compel a finding that the claims are intertwined. Holts also seeks to avoid arbitration by asserting that each employer must meet the "economic realities test" the claims cannot be considered intertwined. This argument is a red

---

[3] It is also noteworthy that any cross-claims or disputes between Udeo and TNT concerning Holts' FLSA claims must be submitted to arbitration under the Udeo-TNT independent contractor agreement.

herring.  The Court's task here is limited to determining whether the equitable estoppel doctrine applies to permit TNT to compel Holts' claims to arbitration; the Court need not resolve the merits of the plaintiff's FLSA claims here or the relationship among each of the parties by resort to the contract governing Holts and Udeo's relationship or the contract governing Udeo's and TNT's relationship.  That each alleged employer must meet the economic realities test[4] does not alter the fact that Holts identically alleges failure to pay overtime wages against his "joint employers" -- the signatory and non-signatory to the arbitration agreement governing Holts' claims.

TNT can compel arbitration because Holts alleges "substantially interdependent and concerted misconduct" between Udeo, a signatory, and TNT, a non-signatory. The allegations include substantially interdependent and concerted misconduct where, as here, the claims against the non-signatory defendant depend in some way on the acts of the signatory defendant.  Had TNT been a signatory to Holts' agreement with Udeo, the claims against it would fall within the scope of the arbitration

---

[4] The economic realities test is applied to determine whether a party is an "employer" within the meaning of the FLSA. Gray v. Powers, 673 F.3d 352, 354 (5th Cir. 2012). Under this test, courts define employer broadly and those with operational control over employees may be individually liable. Orozo v. Plackis, 757 F.3d 445, 448 (5th Cir. 2014).

agreement.  Given the relatedness of the claims collectively asserted against Udeo and TNT, TNT is entitled to compel arbitration under the doctrine of equitable estoppel.  Just like his claims against Udeo, Holts must submit his claims against TNT to arbitration.

Accordingly, IT IS ORDERED: that the defendant's motion to compel arbitration and stay litigation is GRANTED. The Clerk of Court shall stay and administratively close this case, to be reopened if necessary after arbitration is completed.

New Orleans, Louisiana, March 4, 2020

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE